## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MARYLAND, SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel.* CARL NELSON | ) | |
| | ) | Civil Action No. |
| | ) | |
| Plaintiff-Relator | ) | **FILED UNDER SEAL** |
| | ) | Pursuant to 31 U.S.C. § 3730 |
| v. | ) | |
| | ) | |
| LINCOLN EDUCATIONAL | ) | |
| SERVICES, CORP, LINCOLN | ) | |
| TECHNICAL INSTITUTE, INC., | ) | |
| and LINCOLN COLLEGE OF | ) | |
| TECHNOLOGY | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT

Plaintiff-Relator Carl Nelson, by and through undersigned counsel, brings this False Claims Act Complaint, on behalf of the United States of America, against Defendants Lincoln Educational Services, Corp, Lincoln Technical Institute, Inc., and Lincoln College of Technology. This action is brought by Plaintiff-Relator to recover treble damages and civil penalties under the False Claims Act (FCA), 31 U.S.C. §§ 3729 *et seq.*

## INTRODUCTION

1. This is an action to recover treble damages and civil penalties on behalf of the United States of America, arising from false and/or fraudulent statements, records, and claims made, or caused to be made by Defendants Lincoln Educational Services, Corp., Lincoln Technical Institute, Inc., and Lincoln College of Technology (collectively, Defendants).

2.  This *qui tam* action is brought against Defendants for submitting and/or causing the submission of false claims in connection with student loan and grant applications under Title IV of the Higher Education Act of 1965 (HEA).

## JURISDICTION AND VENUE

3.  This action arises under the False Claims Act, as amended, 31 U.S.C. §§ 3729-33. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and under the federal False Claims Act, 31 U.S.C. § 3732.

4.  Venue lies in this district under 28 U.S.C. § 1391(b) and (c) and 31 U.S.C. § 3732(a) because Defendants transact business and have violated 31 U.S.C. §3729 in this district.

## PARTIES

5.  Defendant Lincoln Technical Institute, Inc. (LTI) is a foreign corporation doing business in the State of Maryland. LTI is a for-profit vocational education system of schools, providing training to adult students in a variety of industries.

6.  Defendant Lincoln College of Technology (LCT) is one of the LTI schools. LCT is a Maryland corporation and has a campus in Columbia, Maryland.

7.  Defendant Lincoln Educational Services, Corp. is a New Jersey corporation and is the parent company of LTI.

8.  Plaintiff-Relator Carl Nelson (Nelson) is an adult citizen and a resident of the State of Maryland. Nelson attended the LTI/LCT campus in Columbia, Maryland from 2011-2012 where he completed the Electronic Systems Technician curriculum. Nelson took out Title IV student loans in order to complete the curriculum.

9.  To the extent that there has been public disclosure of the alleged facts in this complaint,

Plaintiff-Relator Nelson is an original source of that information as defined by 31 U.S.C. §

3730(e)(4)(B).

## STATUTORY AND REGULATORY FRAMEWORK

10. The federal False Claims Act (FCA) provides that any person who knowingly presents, or

causes to be presented, a false or fraudulent claim for payment or approval, or who knowingly

makes, uses or causes to be made or used, a false record or statement material to a false or

fraudulent claim to the Government is liable for damages in the amount of three times the

amount of loss the Government sustained and penalties which range between $5,500 and

$11,000 per claim. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.3. For purposes of the FCA, "the terms

'knowing' and 'knowingly' mean that a person, . . . (1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless

disregard of the truth or falsity of the information." *Id*. at § (b). "[N]o proof of specific intent to

defraud is required" for a successful claim under the FCA. *Id.*

11. Pursuant to Title IV of the Higher Education Act of 1965 (HEA), 20 U.S.C. §§ 1070 *et*

*seq.*, the Department of Education (DoE) provides financial assistance in the form of grants,

loans, loan guarantees, and interest subsidies to eligible students to help defray the costs of

education, including: the Federal Pell Grant Program, 20 U.S.C. §§ 1070a *et seq.*, 34 CFR § 690;

the Federal Family Education Loan Program, 20 U.S.C. §§ 1071 *et seq.*, 34 CFR § 682; the

Federal Direct Student Loan Program, 20 U.S.C. §§ 1087a *et seq.*, 34 CFR § 685; the Federal

Perkins Loan Program, 20 U.S.C. §§ 1087aa *et seq.*, 34 CFR § 674; the Federal Work Study

Program, 42 U.S.C. §§ 2751 *et seq.*, 34 CFR § 675; and the Federal Supplemental Educational

Opportunity Grant Program, 20 U.S.C. §§ 1070b *et seq.*, 34 CFR § 676.

12. In order to become eligible to receive Title IV funds under the Title IV programs, each institution must enter into a Program Participation Agreement (PPA) with the DoE. PPAs "condition the initial and continuing eligibility of the school to participate in a program upon compliance with" the requirements of 20 U.S.C. § 1094 and 34 C.F.R. § 668.14.

13. Pursuant to 20 U.S.C. § 1094(c)(3), misrepresentation of the educational program by a school, and/or misrepresentation of the employability of its students is considered a "substantial misrepresentation" and in violation of the PPA and could lead to numerous different penalties, including terminating the school's eligibility under the program and imposing civil penalties for each misrepresentation.

14. "Substantial misrepresentation" is defined as "any misrepresentation on which the person to whom it was made could reasonably be expected to rely, or has reasonably relied, to that person's detriment." 34 CFR § 668.71(c)

15. 34 CFR § 668.71(b) further defines a "substantial misrepresentation" as including misrepresenting "the nature of [the school's] education program" and misrepresenting "the employability of [the school's] graduates."

16. Misrepresentation regarding the employability of graduates includes making "false, erroneous, or misleading statements concerning the institution's relationship with any organization, employment agency, or other agency providing authorized training leading directly to employment." 34 CFR § 668.74.

17. After a school becomes eligible to receive Title IV funds by entering into a PPA, claims for payment of those funds can be made in various ways. Under some programs, such as the Pell Grant program, students submit requests for funding directly to the DoE, or to the DoE with assistance from the school, while under other programs, such as the Guaranteed Student Loan

program and the FFELP, students and the school jointly submit requests for loans to private lenders which are guaranteed by state guaranty agencies that are, in turn, insured by the DoE, which pays only in the event of a student default.

18. With respect to all Title IV programs, the disbursement of federal funds rests on required statements of eligibility made by schools that were necessary for requests for payment to be considered.

## THE NATIONAL CENTER FOR CONSTRUCTION EDUCATION AND RESEARCH

19. The National Center for Construction Education and Research (NCCER) is a nationally recognized training and accreditation body for numerous construction and maintenance fields, including the Electronic Systems Technician (EST) field.

20. NCCER has developed respected curricula and assessments for the training of workers in the numerous construction fields. NCCER does not give the training itself. Students complete the NCCER curriculum at an Accredited Training and Education Facility (ATEF) or with an Accredited Training Sponsor (ATS), which includes for-profit colleges.

21. Upon successfully completing an NCCER curriculum, a student receives NCCER certification in their field.

22. NCCER certification is valuable to potential employers as it allows them to know the quality and depth of training workers have acquired in their field.

23. Each "level" of training in an NCCER curriculum is broken up into multiple sequenced "modules" and lasts for approximately a year.

24. Successful completion of each module is contingent upon the student successfully completing an NCCER written test and performance test.

25. NCCER recommends that records of successful student completion of each module are to be submitted quarterly to NCCER, but they must at least be submitted annually. Without this information, NCCER has no record that a student has completed the level or module and so the student does not receive NCCER certification. Records must be submitted within five years of the student completing a module.

26. Instructors of NCCER classes must be properly certified by the NCCER before they can teach students. In order to be certified they must either have reached the journey or technician level in the area they seek to teach, or they must have a minimum three years of experience as a certified teacher in a vocational/technical construction or maintenance-related training program.

27. A Master Trainer, in order to be certified as such, must have either: 1) two years of experience as a trainer, instructor, or educator; 2) an Associate's Degree or higher in education, a construction-related field, industrial arts, engineering, chemistry, or similar field; or 3) at least two years at a supervisory level in construction or maintenance.

28. NCCER does not verify Instructor and Master Trainer qualifications. It relies on the ATEF or ATS to verify that Instructors and Master Trainers are properly qualified and trained. NCCER bases Instructor and Master Trainer certification on the ATEF's or ATS's verification.

29. Sponsor Representatives are Master Trainers that serve as the liaison between the ATEF/ATS and the NCCER. That is, the Sponsor Representative is the person that updates the NCCER on students' successful completion of modules and levels so that students can receive their NCCER certification.

## FACTS OF THE CASE

30. The LTI campus in Columbia, Maryland offers numerous vocational training programs to high school graduates, including the one year EST level one training program through LCT.

31. Plaintiff-Relator Nelson attended the LTI/LCT campus in Columbia, Maryland from September 2011 to August 27, 2012. While there Plaintiff-Relator took and successfully completed LCT's EST level one program.

32. At the time Plaintiff-Relator Nelson attended the EST program at LCT, LTI/LCT advertised the program as NCCER-certified. LCT used the NCCER training program to teach students.

33. Plaintiff-Relator Nelson, as well other students in the EST program, believed, based on LTI/LCT statements, that they would obtain NCCER certification upon successful completion of the EST program.

34. An LCT document entitled "EST Electronic Services Technician Classes, Skills, and Applications" provided to all students explicitly stated that NCCER certification would be earned upon successful completion of the EST program at LTI.

35. The LTI website, as of 2010/2011 when Plaintiff-Relator Nelson made the decision to attend the EST program at LCT, stated that LTI and LCT was partnered with NCCER for the EST program. The LTI website still states, as of the filing of this complaint, that the EST program is partnered with NCCER.

36. LTI/LCT advertised its programs, including the EST program, as "career oriented in nature with objectives designed to prepare graduates for immediate employment," in the Columbia Campus Official Student Catalog given to all students before they enroll in the school.

37. The LTI website advertises their Electronic training programs, including the EST program, as one geared toward "prepar[ing] you for a career." The LTI website refers to the curricula offered as "career training program[s]" in many places, including specifically the EST program on the "Electronics training at Lincoln College of Technology Columbia, MD" page.

38. The NCCER certification in EST was important for the program because employers frequently prefer (and many require) employees to have a nationally-recognized certification. Without one, employers cannot accurately gauge the level of knowledge and experience prospective employees have in the trade.

39. Plaintiff-Relator Nelson chose to attend the EST program at LCT because he believed completing the program would give him a level one NCCER EST certification.

40. Upon information and belief, all other students who attended the EST program thought they would obtain NCCER level one EST certification upon successful completion of the LCT EST program.

41. Upon starting the curriculum at LCT, Plaintiff-Relator Nelson quickly learned that his instructors were not knowledgeable of the subject for the classes they were teaching.

42. In one introductory class, EST 103 Electronic Theory and Principles, the Instructor, Sam Laquey, made a basic electrical wiring mistake that blew the power in the entire building. The Instructor could not determine what had caused the problem. Plaintiff-Relator Nelson himself knew enough to know that the Instructor had directly connected a low voltage wire to the building's high voltage wiring, causing the power outage.

43. In another class, the Master Trainer, Otis Bennett (Bennett), told the students that he didn't understand why the school had him teaching Fire Alarm Safety because, he admitted, he

knew nothing about Fire Alarm Safety. Bennett had, in fact, been hired by LTI originally to teach Telecommunications because that was the field he was experienced in.

44. Plaintiff-Relator Nelson recalls Instructors telling students that the Instructors were learning the subject matters for which they were supposed to be teaching along with the students, and that they did not actually know the material they were teaching from the NCCER textbook.

45. Plaintiff-Relator Nelson and the other students were lead to believe they would receive proper instruction in LCT's EST curriculum, when in actuality they were not provided with Instructors who knew the subjects they were required to teach.

46. LTI/LCT was required to update the NCCER of students' successful completion of modules at least annually, although the NCCER recommended quarterly.

47. NCCER would not know that students are taking or have successfully completed NCCER modules and levels unless the Sponsor Representative of the ATS provides the records to NCCER. Without that, students do not receive NCCER certification.

48. The Master Trainer/Sponsor representative at LTI/LCT's Columbia campus, Paul Pugiet (Pugiet), left LTI/LCT around 2008.

49. LCT did not replace him with another Master Trainer/Sponsor Representative until 2010/2011 when they asked Bennett to get Master Trainer certification in order to take over Pugiet's vacant role.

50. LTI/LCT had Bennett become a Master Trainer because Bennett repeatedly warned LTI/LCT that the program, per NCCER regulations, needed a Master Trainer. Without one, he warned, the NCCER could not be updated on students' successful completion of the program and students would therefore not receive NCCER certification.

51. Between the time of Pugiet's exit and Bennett taking over the role of Master Trainer/Sponsor Representative, no one was updating NCCER on students' module and level completion.

52. Upon information and belief, no LCT EST student at the Columbia, Maryland campus received NCCER certification in that time even though LTI/LCT advertised its EST program as an NCCER program geared toward NCCER certification and successful career training.

53. Upon becoming the Master Trainer, Bennett attempted to submit as many of the backlogged students' module and level completions as possible but there was too much of a backlog for him to complete submission of all the backlogged students' records to NCCER.

54. Bennett informed the LTI/LCT corporate managers of the backlog and of the fact that because of the backlog students were not receiving NCCER certification but the corporate managers took no action.

55. Bennett was fired in May 2012.

56. Upon information and belief, after his firing LTI/LCT did not replace him with another Master Trainer/Sponsor Representative.

57. Upon information and belief, after Bennett's termination reporting to NCCER ceased.

58. Plaintiff-Relator Nelson successfully completed the entire year long EST program offered by LCT.

59. At the end of the program, Plaintiff-Relator Nelson expected to obtain NCCER EST level one certification, as was represented to him when he enrolled.

60. The NCCER only has record of Plaintiff-Relator Nelson completing one module of the EST level one program.

61. LTI/LCT never updated NCCER with Nelson's successful completion of all the modules of EST level one.

62. Plaintiff-Relator Nelson never received NCCER certification.

63. Upon information and belief, none of the students in the EST program with Plaintiff-Relator Nelson obtained NCCER certification as promised, despite successful completion of the degree program.

64. With the poor training Plaintiff-Relator Nelson received from unknowledgeable instructors and without the NCCER certification, Plaintiff-Relator Nelson was not qualified for jobs in the EST field.

65. Upon information and belief, none of the students in the program with Plaintiff-Relator Nelson were able to obtain jobs in the EST field.

66. Plaintiff-Relator Nelson took out over $20,000 in federal student loans in order to enroll in the LTI/LTC EST program.

67. Upon information and belief, all the students used federal financial aid in order to enroll in the LTI/LTC EST program.

68. Defendants knew student records weren't being submitted to NCCER. Defendants knew this failure to submit records prevented students from receiving NCCER certification.

69. Defendants continued to advertise the EST program as a career-oriented NCCER program that would lead to NCCER certification for students upon their successful completion of the program.

70. Had Plaintiff-Relator known that he would not receive the NCCER EST level one certification upon completion of LTI/LCT's program, he would not have enrolled.

71. Defendants' misstatements about the nature of the EST program caused the submission of false claims to the government.

72. Students would not have attended the EST program at LTI/LCT if they knew they would not, in fact, obtain NCCER certification.  These students took out Title IV student loans in order to enroll in the EST program based on Defendants' material misstatements.

73. Defendants' misstatements left them ineligible to participate in Title IV programs.

**COUNT I**
**FALSE CLAIMS ACT VIOLATIONS**
**31 U.S.C. § 3729(a)(1)(A)**
**(Presenting or Causing Presentment of a False Claim)**

74. Plaintiff-Relator re-alleges and incorporates by reference the allegations in the previous paragraphs of this Complaint.

75. By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the United States Government for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(a).

**COUNT II**
**FALSE CLAIMS ACT VIOLATIONS**
**31 U.S.C. § 3729(a)(1)(B)**
**(Knowingly Presenting a False or Fraudulent Record)**

76. Plaintiff-Relator re-alleges and incorporates by reference the allegations contained in the previous paragraphs of this Complaint.

77. By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, to get the false or fraudulent claims paid or approved by the Government in violation of 31 U.S.C. § 3729(a)(1)(B), presented or caused to be

presented, false or fraudulent claims to the United States Government for payment or approval in violation of 31 U.S.S. § 3729(a)(1)(B).

## PRAYER FOR RELIEF

78. WHEREFORE, on Counts I and II, Plaintiff-Relator Carl Nelson, on behalf of himself and the United States Government pray:

a. On Count I, judgment against the Defendants for treble damages as further established at trial plus a penalty of $11,000 per false claim as established at trial; and

b. On Count II, judgment against the Defendant for treble damages as further established at trial plus a penalty of $11,000 per false claim as established at trial.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, the United States of America, on relation of Relator, hereby demand trial by jury on all issues so triable.

Respectfully submitted,

Nathan M. Peak, Esq.
ASHCRAFT & GEREL, LLP
4301 Garden City Drive, Suite 301
Landover, MD  20785
Tel:  (301) 459-8400
Fax:  (301) 459-1364
npeak@ashcraftlaw.com